IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **BILLY E. FILES and LINDA L. FILES,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No: 4:11-CV-01171-RBP |
| | ) |
| **CHURCH OF GOD, et al.,** | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

This cause comes before the court on the defendants Southern New England Region for the Church of God, Inc. ("SNE") and Jonathan Ramsey's Motion for Summary Judgment (Doc. 121), the defendant Church of God's Motion for Summary Judgment (Doc. 126), and the plaintiffs Billy and Linda Files' Motion for Summary Judgment (Doc. 123). All motions were filed on September 26, 2012. These motions addressed the plaintiffs' Third Amended Complaint (Doc. 117). The parties have briefed, responded and replied to the various motions for summary judgments.

Facts[1]

In 2005, the Files, a couple living in Alabama, loaned $100,000, unsecured, to defendant Celestial Praise at a 10.5% interest rate. The investment was made through the efforts of Wayne Pitts, Matthew Pitts, and Wayne Pitts Real Estate, ("the Pitts defendants") a Florida company known for assisting churches seeking financing. A promissory note (the "Note") was executed on

---

[1] As required when considering a summary judgment motion, the court considers the facts in the light most favorable to the non-movant. *Hardy v. Regions Mortg., Inc.*, 449 F. 3d 1357, 1359 (11th Cir. 2006).

March 19, 2005 by Celestial Praise, by its pastor, defendant Lawrence A. Walden, and Celestial

Praise's Board of Trustees, including defendants Paul Campbell, Kevin Boyce, Sonia Dinnall

a/k/a S. Dinell, A. Brown, and H. Smith.[2] (Doc. 117, Exh. A). A guaranty ("the Guaranty") was

sent to the Files along with the Note. (Doc. 117, Exh. B).  The Guaranty purports to place

repayment responsibility on the Regional Administrative Bishop, defendant Jonathan Ramsey,

and defendant Southern New England Region (SNE). (Doc. 117, Exh. B). It lists "Wayne Pitts

Real Estate & Finance" as the lender of a $2 million loan and is signed by the Board Members of

the Regional Executive Committee and Ramsey. *Id*. Walden and the Pitts defendants arranged an

additional $600,000 of loans after the Guaranty was executed of which SNE and Ramsey had no

knowledge. The Files loan went into default in late 2007.

　　　　After default, Wayne Pitts sent a copy of the Note to SNE, asking it to agree to an

amendment of the Note. SNE refused to sign the amendment. (Doc. 121, Exh. E). Walden,

Celestial Praise, and the Files executed an amendment without SNE's consent. Celestial Praise

again defaulted on the loan in 2008, after the amendment. The Church of God Foundation, Inc.

(the "Foundation") provided Celestial Praise with two loans in 2008 for the purpose of paying

construction liens. These loans were secured by mortgages on Celestial Praise's properties. SNE

guaranteed these loans, which have gone into default as well. Though a payment demand has

been made upon SNE, the loans have not been made current. Celestial Praise ceased paying at all

on the Files' loan in 2011.

　　　　This case originated with a complaint filed on April 4, 2011 (Doc. 1). The clerk filed an

---

[2] There is at least an ambiguity as to whether the "trustees" executed the note only as trustees or as
individuals also.

entry of default against defendant Lawrence A. Walden on September 27, 2011 (Doc. 44).[3] With court permission, the plaintiffs filed the Second Amended Complaint on November 8, 2011 (Doc. 73). A stipulated final judgment against defendant Celestial Praise Church of God, Inc. (Celestial) was entered in favor of the plaintiffs on November 21, 2011 (Doc. 81). A default judgment was entered against defendants Matthew Pitts, R. Wayne Pitts, and Wayne Pitts Real Estate and Finance, Inc. (Pitts defendants) in favor of the plaintiffs on November 29, 2011 (Doc. 86). The plaintiffs again amended their complaint, with court consent, on August 15, 2012 (Doc. 117, Third Amended Complaint).

In the Third Amended Complaint, the Files claim "the Primary Obligors," including Celestial Praise, Celestial Praise's said Board of Trustee members individually, and Walden, breached the Note and were unjustly enriched in the process. They also claim that SNE and Ramsey, individually, breached the Guaranty. The complaint contends that the defendant International Church of God, through its alleged alter-ego and instrumentality Celestial Praise, breached the Note and was unjustly enriched. Additionally, the complaint alleges that the Pitts defendants knowingly made material misrepresentations regarding Celestial Praise's ability to repay the loan which the Files reasonably relied upon in making their loan. The Files also contend the Pitts defendants established a confidential, fiduciary relationship with them which they subsequently breached.

<u>Summary Judgment Legal Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[3] Other defendants were named in this entry of default but were successful in having it set aside as to them.

judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* "[T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is

---

[4] Even though Rule 56 was amended in 2010, "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Advisory Committee's Note (2010 Amendments).

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The substantive law will identify which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). The nonmoving party, however, "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Further, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254. Even so, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the province of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *Id.* at 255. But the non-movant need not be given the benefit of every inference, but only of every reasonable inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Analysis

**A. Church of God**

The Third Amended Complaint presents three claims against the Church of God: breach of contract (the Note), unjust enrichment, and a claim for attorneys' fees and expenses. Both Church of God and the plaintiffs have filed motions for summary judgment on this count.

*1. Breach of Contract*

The breach of contract claim rests upon an "alter ego and instrumentality" theory. The Files claim that the Church of God "exercised complete control and domination over Celestial Praise's property ownership, finances, policies, and governance such that Celestial Praise has no separate mind, will, or existence of its own." (Doc. 117, ¶ 94). The Files allege Church of God similarly controls SNE and directed Celestial Praise, through SNE, to stop paying the Files' loan. (*Id*. at ¶ 95). It is undisputed that Church of God is not a signatory to the Note. Therefore, the only means by which Church of God is liable for breaching the Note is if a reasonable jury could find that Celestial Praise was a mere instrumentality of Church of God, thus "piercing the corporate veil."

Under Alabama law,[5] "where one corporation controls and dominates another corporation to the extent that the second corporation becomes the mere instrumentality of the first, the dominant corporation becomes liable for those debts or torts of the subservient corporation attributable to that abuse of control." *Duff v. Southern Ry. Co.*, 496 So. 2d 760, 762 (Ala. 1986). The standard for imposing liability is three part: "

---

[5] Plaintiffs and Church of God agree that Alabama case law provides no direction on choice of law for piercing corporate veils. If the court were to follow the internal affairs doctrine, choosing the law of the state of incorporation, Massachusetts law would govern. However, both parties agree that Alabama and Massachusetts laws on piercing the corporate veil are so similar that the choice would not be outcome determinative. (Doc. 128, fn. 14; Doc 137, fn. 2). This court will cite to Alabama law.

> 1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;
> 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
> 3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*Heisz v. Galt Industries, Inc.*, 93 So. 3d 918, 930 (quoting *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987)).

The question of whether the parent has complete control is "primarily a question of fact and of degree." *Duff,* 496 So. 2d at 763. Alabama recognizes certain factors which should be considered:

> (a) The parent corporation owns all or most of the capital stock of the subsidiary.
> (b) The parent and subsidiary corporations have common directors or officers.
> (c) The parent corporation finances the subsidiary.
> (d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
> (e) *The subsidiary has grossly inadequate capital*.
> (f) *The parent corporation pays the salaries and other expenses or losses of the subsidiary*.
> (g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.
> (h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.
> (i) The parent corporation uses the property of the subsidiary as its own.
> (j) *The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest*.
> (k) The formal legal requirements of the subsidiary are not observed.

*Id* (emphasis added). None of these factors are dispositive, and the list is not exclusive. *Id*.

Though the application of these business factors to a religious institution is somewhat strained,

these factors will be considered with respect to the factual circumstances at hand.

The main evidence in purported support of the Files' argument for piercing the corporate veil is the "Minutes" of the International General Assembly of the Church of God, which serve as bylaws and operating procedures for churches affiliated with the Church of God. The Files have quoted sections of the Minutes as evidence that "Church of God has the right to exercise complete dominion and control over Celestial Praise." (Doc. 137, p. 5). Pertinent to this case, the Minutes provide rules to govern the ownership of real and personal property of local churches. The Minutes state that articles of incorporation, charters, and bylaws "of local Churches of God shall . . . contain provisions that incorporated local churches shall be subject to the Church of God General Assembly Minutes in all pertinent matters, including conformity with Church of God deed and property requirements." (Doc. 137, p. 5, quoting Supplement to the 2004 Minutes S1(IV)(D)). These deed and property requirements involve an express or implied trust in favor of the Church of God:

> Title to all real and personal property now owned or hereafter acquired by the Church of God (Cleveland, Tennessee, U.S.A._ at any structural level shall be held by and/or conveyed and transferred to its duly elected or appointed trustees and their successors in office in trust for *the use and benefit of the Church of God*. (Cleveland, Tennessee, U.S.A.).

Supplement to the 2004 Minutes S45(III)(2) (emphasis added).

> Should any member or members, in whole or in part, decide to withdraw from the Church of God (Cleveland, Tennessee, U.S.A.), or to take action contrary to the polity of the Church of God (Cleveland, Tennessee, U.S.A.), it is understood that the ownership of all property, both real and personal, *remains* with the Church of God (Cleveland, Tennessee, U.S.A.).

*Id*. at S45(IV) (Emphasis added).[6] The Minutes state that when a local church incorporates, it

---

[6] Note that it "remains" with Church of God.

"merely creates a legal entity to hold in trust the properties, both real and personal, of the Church of God (Cleveland, Tennessee, U.S.A.)." *Id*. at S47. Section S49 of the Supplement to the 2004 Minutes addresses church property directly:

> All property, real and personal, held by or for a particular church, state office, department or agency, whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, is held in trust nevertheless for the use and benefit of the Church of God (Cleveland, Tennessee, U.S.A.).
>
> The centralized governmental structure of the Church of God (Cleveland, Tennessee, U.S.A.) does not provide for local church ownership of properties outside the trust relationship for the sole and exclusive use and benefit of the Church of God (Cleveland, Tennessee, U.S.A.). All deed conveyances, or other actions purporting to effect ownership or control of real or personal property, which are inconsistant with the requirements as set forth in these International General Assembly Minutes are deemed invalid and ineffective to alter the essential trust relationship for the benefit of the Church of God (Cleveland, Tennessee, U.S.A.).
>
> Where there does not exist an express trust covering, real or personal properties utilized by local churches, then an implied trust in favor of the Church of God (Cleveland, Tennessee, U.S.A.) exists by virtue of the Church of God polity as expressed in these Minutes.

*Id*. at S49. This section of text was quoted by the Church of God (Cleveland, Tennessee, U.S.A.) in its verified complaint in a case filed against Anthony R. Scott and the City of Holyoke, Mass. in December 2009. *Spanish Church of God of Holyoke, Mass., Inc. v. Scott, et al.*, Case 3:09-cv-30224, Doc. 1, ¶ 24. While defendant Church of God has attempted to rely upon *Hilani v. Greek Orthodox Archdiocese of America*, 863 F.Supp.2d 711 (W.D. Tenn. 2012) to distance Church of God from such control, the court notes that *Hilani* turned on personal jurisdiction, did not reach the merits of the issue, and is not controlling precedent.

In interpreting these sections of the Minutes, a reasonable jury could determine that these "papers of the parent corporation . . ." make Celestial Praise and SNE "as department(s) or

division(s) of the parent corporation." *Duff,* 496 So. 2d at 763. The significant amount and strength of the language regarding the local ownership and express trust of real property speaks to a level of control. The Files have alleged, and Church of God has admitted, that Celestial Praise's attorneys fees were paid by Church of God. A reasonable jury could interpret this as the parent corporation paying "other expenses or losses of the subsidiary." *Id*. The court finds a genuine fact question as to whether Church of God controls Celestial Praise and SNE to such a level as to pierce the corporate veil.

Even if control exists, Church of God argues that summary judgment should still be granted because the alleged control has not resulted in misuse or fraud which proximately harmed the Files. However, the Files present deposition evidence that Celestial Praise borrowed $285,000.00 from the Church of God Foundation, Inc. in August 2008, which required a first mortgage on the sanctuary and property. It is undisputed that none of these loan proceeds were paid to the Files. (Doc. 125, Ex. C, 36:16-24; 49:15-50:8). There is also evidence that the Church of God, through the Administrative Bishop for the area, directed Celestial Praise to cease payments to its individual lenders, including the Files, in April or May 2011. (Doc. 125, Ex. D, 137:14-25). This evidence provides enough factual dispute regarding potential fraud or misuse to create a genuine issue of material fact on which a reasonable jury could differ.

Because genuine issues of material fact exist, the court will deny the Church of God's Motion for Summary Judgement as to the breach of contract claim, Count I. For the same reasons, the court will also deny the Plaintiffs' Motion for Summary Judgment as to Count I

against Church of God.[7]

*2. Unjust Enrichment*

The complaint also alleges that Church of God "by and through its alter ego and instrumentality Celestial Praise, has directly benefitted and has been unjustly enriched through the receipt of loan funds." (Doc. 117, ¶ 103). In pleading a claim for unjust enrichment, a plaintiff must first show that enrichment has occurred. *See Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145-146 (Ala. 2011). This involves a showing "that (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Id*. at 145 (*quoting Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)). The plaintiff then must show enrichment of the defendant was unjust by showing "(1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Id.* at 146 (quoting *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)).

The Minutes and their significant referral to the trust relationship regarding property held by Celestial Praise, as a local church, create a genuine issue of material fact as to whether defendant Church of God has knowingly accepted property, via the trust relationship, that was originally purchased partly using the Files' loan. It is possible for a reasonable jury to find that Church of God unjustly received this benefit by directing Celestial Praise to cease paying

---

[7] Not only does Church of God have a present and continuing ownership of a beneficial interest in the property of Celestial Praise, it stood to gain in the value of this interest if the loan proceeds had been properly used. Further, there is a reasonable inference that better facilities of Celestial Praise would have increased its membership and the periodic cash payments which it was due to pay to Church of God.  The Church of God's interest goes beyond ecclesiastical as determined in *Hilani*, *(supra)*.

individual lenders, including the Files. It might also be possible for a reasonable jury to find there to be no evidence that the Files' loan was used to purchase the property at all. Several genuine issues of material fact on which a reasonable jury could differ exist within this particular count. Therefore, the court will deny Church of God's Motion for Summary Judgment on Count II Unjust Enrichment. For the same reasons as stated above, the court will also deny the plaintiffs' Motion for Summary Judgment as against Church of God for Count II.[8]

*3. Attorneys' Fees and Expenses*

Because the question of liability for the breach of contract and unjust enrichment issues still exists, the court will presently deny both Church of God's Motion for Summary Judgment and plaintiffs' Motion for Summary Judgment on the issue of attorneys' fees and expenses.

**B. SNE and Jonathan Ramsey**

The Files allege that SNE and Ramsey, in his individual capacity, are liable for the debt of Celestial Praise pursuant to the terms of the Guaranty, and that, by refusing to pay the debt, have breached the Guaranty contract. These allegations make up Counts II - Breach of Contract - and IV - Attorney's Fees. SNE and Ramsey, represented by the same counsel, filed a Motion for Summary Judgment on these claims. The plaintiffs have also filed a Motion for Summary Judgment against SNE and Ramsey.

*1. Counts II and IV against Ramsey as an Individual*

Alabama law regarding contracts dictates that the terms within the 'four corners' of the contract control the parties. *See Hartford Fire Ins. Co. v. Shapiro*, 117 So. 2d 348, 352 (Ala. 1960). Parol evidence is only admissible if the contract is ambiguous. *Marriot Intern., Inc. v.*

---

[8] Also see immediately prior footnote.

*deCelle*, 772 So. 2d 760, 761 (Ala. 1998) (*citing Cummings v. Hill*, 518 So. 2d 1246, 1247 (Ala. 1987)). "In determining whether a contract is ambiguous as to the capacity in which a party signed it, [Alabama law] looks to the consistency between the body of the contract and the signature block." *Id*. While the body of the Guaranty does mention the Administrative Bishop, it is in reference to notification to trigger SNE to make the account current after default. Additionally, the body of the contract always refers to "the Administrative Bishop" as an office rather than a specific individual occupying the office at a specific time. This treatment is consistent with the signature block, which provides a space for the signature of "Administrative Bishop." The Guaranty is consistent in its treatment of the Administrative Bishop as a representative of SNE and never mentions Jonathan Ramsey as an individual. *See Professional Business Systems, Inc. v. Kaufman*, 507 So. 2d 421 (Ala. 1987) (officer of corporation held not individually liable because the body of contract and signature block were consistent in treating him as a representative officer of the corporation).

Because the Guaranty is not ambiguous as to the capacity in which Ramsey signed it, the court finds the terms of the contract control. As a matter of law, Jonathan Ramsey is not individually liable for any alleged breach of the Guaranty contract, or resulting attorneys' fees. Ramsey's Motion for Summary Judgment regarding Count II and IV as against Jonathan Ramsey is due to be GRANTED. The plaintiffs' Motion for Summary Judgment against Ramsey will therefore be denied. Jonathan Ramsey will be DISMISSED as a defendant.

    2. Counts II and IV against SNE

The argument between SNE and the Files rests on the interpretation of the Guaranty. The Files complaint alleges that there was a "scrivener's error" listing Wayne Pitts as "Lender" on the

Guaranty contract and that the Guaranty is, at the very least, ambiguous as to the identity of the Lender. SNE argues that the language on the Guaranty accurately reflects its understanding of the situation of Wayne Pitts functioning as a broker-lender. The court must decide whether the Guaranty is ambiguous.

Alabama law applies general contract interpretation rules to the "interpretation or construction of a guaranty contract." *Gov't St. Lumber Co., Inc. v. AmSouth Bank, N.A.*, 553 So. 2d 68, 75 (Ala. 1989). A guaranty is binding on the guarantor "only to the extent and in the manner stated in the contract of guaranty." *Id* (quoting *Pate v. Merchants Nat'l Bank*, 428 So. 2d 37, 39 (Ala. 1983)). "The intention of the parties controls in construing a written contract, and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous." *Loerch v. National Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993). However, if a writing

> through mutual mistake . . . or mistake of one of the parties, and fraud or deception on the part of the other, or mistake of the scrivener who drew the contract for the parties, contains substantially more or less than the parties intended or the intention of the parties is not expressed 'due to inapt language' it will be reformed to express the true intention of the parties.

*Pullum v. Pullum*, 58 So. 3d 752, 756 (Ala. 2010).

In the instant case, both parties agree that the plain language of the Guaranty contract does not represent the true intention of the parties. The Guaranty provides Wayne Pitts' name and contact information for the "Lender." However, there is at least a reasonable inference that the parties knew that the Pitts were only brokers. Even SNE argues that the Pitts were brokers for a bank. SNE claims that the plain language indicates its understanding at the time the contract was signed that Wayne Pitts was acting as a broker for a bank and would arrange for a single $2

million loan. SNE contends that it would not have guaranteed the subsequent numerous individual loans which totaled $2.6 million. Though reformation for a unilateral mistake is not typically allowed, it is permissible "when there is fraud or inequitable conduct on the part of the other party to the contract." *Pullam*, 58 So. 3d at 756-757.

The Files argue that the listing of Wayne Pitts as the Lender is a "scrivener's error," an error by the party who drafted the document. Alabama law treats scrivener's errors like mutual mistake in which the documents do not represent the true intent of the parties. *Sherman v. Woerner Magnolia Farms, Inc*., 565 So. 2d 601, 601 (Ala. 1990). Both parties are seeking a form of reformation and, thus, have the burden to prove, by clear and convincing evidence, " . . . first, that the writing does not truly express the intention of the parties - that on which their minds had agreed; and, second, what it was the parties intended the writing should express. . . . If the proof is uncertain in any material respect, it will be held insufficient." *Id*. While it is clear that the Guaranty is ambiguous and does not express the parties' intentions, there is a genuine factual issue as to what the parties actually intended. SNE's Motion for Summary Judgment on Count II - breach of the Guaranty contract - and Count IV - the accompanying claim for attorneys' fees - will presently be denied. For the same reasons, the Plaintiffs' Motion for Summary Judgment as against SNE will be denied.

**C. Individual Board Defendants Campbell, Boyce, Dinnall, Brown, and Smith**

Plaintiffs have alleged that the individual members of the Board of Trustees who signed the Notes along with Celestial Praise are individually liable, thus becoming liable for the breach of note and associated attorneys fees and costs. These allegations comprise Counts I, III, and IV. These individuals, including Paul Campbell, Kevin Boyce, Sonia Dinnall, A. Brown, and H.

Smith, have not answered the Third Amended Complaint or responded to the plaintiffs' Motion for Summary Judgment. The individual Board members did file a response (doc. 78) to the Second Amended Complaint, and default has not been entered against them. Without a response to the plaintiffs' Motion, the court can only consider the facts as set out by the plaintiffs, though it draws inferences in favor of the non-moving party. The plaintiffs bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. at 323.

    *1. Count I: Breach of the Note*

    In a breach of contract case, the plaintiff has the burden of establishing "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). The plaintiffs assert that the Board individuals signed in the capacity of individual "Primary Obligors," thus creating a valid contract between them and each Board individual. "In determining whether a contract is ambiguous as to the capacity in which a party signed it, [Alabama law] looks to the consistency between the body of the contract and the signature block." *Marriot Intern*, 772 So. 2d at 761. The plaintiffs have presented the Note, attached to their Third Amended Complaint (doc. 117), which names "the undersigned Celestial Praise Church of God and P. Campbell, K. Boyce, S. Dinell, A. Brown, H. Smith (collectively the "Promisor") each as principal, jointly and severally." (Exh. A, Doc. 117). The Note appears to have been signed by all of the Board individual defendants on a single signature line with the designation of "Trustees" under the line. (*Id*.) The court finds an inconsistency between the way the individuals are named in the body of the contract (as individuals without reference to their

16

roles as Trustees) and the way they are named in the signature block (referenced as Trustees who sign on one line as a group) to create an ambiguity. Thus, there is a genuine issue of material fact. The plaintiffs' motion will be denied as to Count I against Campbell, Boyce, Dinnall, Brown, and Smith.

    *2. Count III: Unjust Enrichment*

In pleading a claim for unjust enrichment, a plaintiff must first show enrichment has occurred. *See Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145-146 (Ala. 2011). This involves a showing "that (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Id.* at 145 (*quoting Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)). The plaintiff then must show enrichment of the defendant was unjust by showing "(1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Id.* at 146 (quoting *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)).

The plaintiffs have not established as a matter of law a claim of unjust enrichment against the individual Board defendants sufficient to gain a grant of summary judgment. Neither their Third Amended Complaint nor the Motion for Summary Judgment provides sufficient evidence to show the individual Board defendants accepted and retained a personal benefit. The plaintiffs' motion will be denied as to Count III against Campbell, Boyce, Dinnall, Brown, and Smith.

    *3. Count IV: Attorneys' Fees and Costs*

Because the plaintiffs' motion will be denied as to Counts I and III against the individual

Board defendants, the court will also deny the plaintiffs' motion for summary judgment on Count IV, which alleges liability for attorneys fees. There exists a genuine issue of material fact as to the defendants' liability for such fees and costs, and the plaintiffs are not entitled to judgment as a matter of law.

      A separate order will be issued consistent with this memorandum.

      This the 3rd day of April, 2013.

                               */s/ Robert B. Propst*
                              **ROBERT B. PROPST**
                    **SENIOR UNITED STATES DISTRICT JUDGE**